# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| **MAURA ANNE STUART**, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 13 C 9262 |
| **LOCAL 727, INTERNATIONAL BROTHERHOOD OF TEAMSTERS**, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Maura Anne Stuart ("Stuart") has brought a Title VII action against Local 727, International Brotherhood of Teamsters ("Local 727"), charging that it had "discriminated against her on the basis of her sex by failing to refer her to production companies for driver jobs on movie and television productions" (Page 1 of her Response to Defendant's Affirmative Defense). That affirmative defense ("AD") by Local 727 had asserted that "this action is time barred" because "no discriminatory actions are alleged to have occurred during the 300 days prior to the filing of the Charge" (that last reference is to Stuart's filing of a Charge of Discrimination with EEOC on October 6, 2011 [Complaint ¶ 3], which culminated in EEOC's mailing of a right-to-sue letter to Stuart's counsel dated September 30, 2013 [Complaint ¶ 5]). Because it is undisputed that Stuart filed this action within 90 days of her counsel's receipt of that right-to-sue letter (Complaint ¶ 6), the asserted untimeliness focuses on the 300-day period between December 16, 2010 and October 11, 2011.

In response to this Court's March 3, 2014 memorandum order that directed Stuart's counsel to respond to the timeliness issue raised by Local 727, counsel promptly (on March 14)

filed the Response referred to earlier. It asserts that Local 727's AD violated the basic principle that such an AD must credit a complaint's allegations while explaining why the pleader is nonetheless not liable to plaintiff (see App'x ¶ 5 to State Farm Mut. Auto. Ins. Co. v. Riley, 199 F.R.D. 276, 279 (N.D. Ill. 2001), and in that respect it contends that when Stuart's allegations are thus credited Stuart has brought herself within the 300-day window by showing "that Local 727 repeatedly failed to refer Stuart for driver jobs for at least 25 movie and television productions during a multi-year time period which began in 2010 and continued through 2011 and each year thereafter while it referred numerous men -- and no women -- for these same jobs" (Response at 2).

But the trouble with that position is that Stuart is hoist by her own petard. From her detailed recounting of events it is plain that she knew full well of the "boys' club" (male-only) situation that existed in the Movie/Trade Show Division even before jurisdiction over that Division was transferred from Teamsters' Local 714 to Local 727 in May 2008 -- Stuart had unsuccessfully been attempting to become a member of that Division since 2005, and the account in her Complaint expressly attributes that situation to sex discrimination. Hence Stuart's counsel asserts that the scenario she portrays fits her within the statutory 300-day window because (as stated in her Response at 6):

> Under Title VII, each discrete act of discrimination, such as a union's failure to refer an individual for an employment opportunity because of her sex, "constitutes a separate actionable 'unlawful employment action.'" *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). Stuart filed her EEOC charge on October 6, 2011. Consequently, each time that Local 727 failed to refer Stuart for a driver job on a movie or television production in 2011 -- including the July 2011 Autumn Frost/Superman production which is described in detail in the complaint (¶¶32-35) -- created a separately actionable claim that is unquestionably timely because it is within 300 days of October 6, 2011 (the date Stuart filed her EEOC charge).

But Stuart's counsel should (and perhaps does) know better.  Morgan, 536 U.S. at 114 does not speak of "a union's failure to refer an individual for an employment opportunity" -- it speaks of "refusal to hire" when it talks of discrete acts of discrimination.  There is of course a critical difference between "failure to refer" and "refusal to hire" -- the latter term denotes a prospective employer's rejection of a prospective employee's specific request to be hired, while the "failure to refer" concept would place someone such as Stuart in the position of a ticking time bomb (or more accurately a non-ticking time bomb) who could assert being victimized by discrimination whenever Local 727, knowing that at some earlier point she had evinced a desire to be considered for possible employment, failed to reach out to her even in the absence of a current application for a job that had opened up.

Importantly, Morgan itself, in the portion of the Supreme Court's opinion in which all nine Justices joined, rejected the position that the Ninth Circuit had taken in that case and that is essentially what Stuart's counsel argue for here, under which a discriminatory practice rather than a discrete discriminatory act creates actionability.  Here are relevant excerpts from Morgan, 536 U.S. at 110, 111, 113, 114 (citations and footnote omitted):

> A discrete retaliatory or discriminatory act "occurred" on the day that it "happened."  A party, therefore, must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it.
>
> \*   \*   \*
>
> Morgan argues that the statute does not require the filing of a charge within 180 or 300 days of each discrete act, but that the language requires the filing of a charge within the specified number of days after an "unlawful employment *practice*."  "Practice," Morgan contends, connotes an ongoing violation that can endure or recur over a period of time.  See Brief for Respondent 25-26.  In Morgan's view, the term "practice" therefore provides a statutory basis for the Ninth Circuit's continuing violation doctrine.  This argument is unavailing, however, given that 42 U.S.C. § 2000E-2 explains in great detail the sorts of

actions that qualify as "[u]nlawful employment practices" and includes among such practices numerous discrete acts.

* * *

There is simply no indication that the term "practice" converts related discrete acts into a single unlawful practice for the purposes of timely filing. Cf. 2000e-6(a) (providing that the Attorney General may bring a civil action in "pattern or practice" cases).

We have repeatedly interpreted the term "practice" to apply to a discrete act or single "occurrence," even when it has a connection to other acts.

* * *

We derive several principles from these cases. First, discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180- or 300-day time period after the discrete discriminatory act occurred.

* * *

The Court of Appeals applied the continuing violations doctrine to what it termed "serial violations," holding that so long as one act falls within the charge filing period, discriminatory and retaliatory acts that are plausibly or sufficiently related to that act may also be considered for the purposes of liability. With respect to this holding, therefore, we reverse.

When those principles are applied to a careful vetting of Stuart's allegations, that examination reveals that <u>no</u> actual "refusal to hire" took place during the 300-day period between December 10, 2010 and October 6, 2011. Stuart says plenty about the period <u>before</u> December 10, 2010, and she speaks as well of post-October 6, 2011 events (Complaint ¶¶ 60-62), but any reference to a <u>refusal</u> to refer her for employment during the critical time frame is conspicuously absent -- a situation that is quite understandable, of course, because she makes no allegation of having made a request for any such referral during the relevant time frame.

- 4 -

Finally, Stuart's effort to salvage her claim by invoking notions of equitable estoppel and equitable tolling don't work either. In that regard she points to statements attributed to a Local 727 business agent, Jon Magna ("Magna"), most notably an undated alleged conversation in which he assertedly "told Stuart not to bother calling in because he would call her when he had something available" (Complaint ¶ 51).[1] That statement antedated the statutory 300-day period, and more importantly it was followed -- also before the onset of that 300-day period -- by "a number of false reasons why Local 727 had not referred her for work on the movie and television production" (Complaint ¶ 52), lastly a false statement that "the Movie/Trade Show Division are having cutbacks and they do not need that many guys to work" (Complaint ¶ 53).

As with Stuart's detailed allegations in the Complaint, her October 2011 Charge of Discrimination filed with EEOC contained a chapter-and-verse recital reflecting her particularized and long-standing knowledge of the sex-based discrimination to which she was subjected. None of the things about which she now complains, including the bogus putoffs voiced by Magna, was a mystery to her -- and critically, that was also true not later than the fall of 2010, when those false statements were made. Hence any purported reliance by Stuart on those admittedly false communications could not satisfy the requirement of <u>reasonable</u> reliance that is essential to such equitable defenses.

## Conclusion

What has been said here might be viewed as unduly lengthy, but for the fact that it was necessary to scotch Stuart's attack on Local 727's AD as assertedly noncompliant with the

---

[1] Local 727's Answer denies that allegation, but as said earlier this opinion credits Stuart's version arguendo (without making any factual finding) for purposes of considering the AD.

standards established by Fed. R. Civ. P. 8(c) and the caselaw interpreting and applying that Rule (again see App'x ¶ 5 to <u>State Farm</u>).  But the detailed analysis here has confirmed the untimeliness of Stuart's Complaint as asserted in Local 727's AD, and the Complaint and this action are therefore dismissed because of such untimeliness.

                                                      Milton I. Shadur
                                                      Senior United States District Judge

Date:  March 18, 2014